UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

KAMESWARA R. VYSYARAJU ET AL.,

                      **Plaintiffs,**          **12 Civ. 4420 (JGK)**

          **- against -**            **MEMORANDUM OPINION AND
ORDER**

MANAGEMENT HEALTH SOLUTIONS, INC.,

                     **Defendant.**
————————————————————————————————

**JOHN G. KOELTL, District Judge:**

    This case arises from a stock purchase agreement (the
"Agreement") between the plaintiffs and the defendant.  The
Agreement governed the sale of the plaintiffs' stock in
companies collectively referred to as AtPar to the defendant.
Pursuant to the Agreement, the defendant agreed to pay the
plaintiffs a sum calculated according to Generally Accepted
Accounting Principles ("GAAP") if the AtPar stock revenues hit
or exceeded a specific threshold amount.

    The plaintiffs allege that the defendant breached the
Agreement by failing to apply GAAP to calculate AtPar revenues
as specified in the Agreement.  The plaintiffs seek a
declaratory judgment to resolve the alleged ambiguity in the
Agreement regarding the meaning of GAAP.  The plaintiffs have
also brought claims for breach of contract, unjust enrichment,
estoppel, and breach of the implied covenant of good faith and
fair dealing.  The plaintiffs request appointment of an

independent accounting firm, an accounting, and that this Court retain jurisdiction to enter final judgment from any award of an independent accounting firm.

The defendant has moved to dismiss this action on the grounds that there is no ambiguity in the contract regarding the meaning of GAAP.  The defendant also argues that it has complied with the Agreement and that the plaintiffs are not entitled to any of the relief requested.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the complete diversity of citizenship of the parties.

For the reasons explained below, the motion to dismiss is **granted**, and the Amended Complaint is **dismissed**.


**I.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the Complaint as true, and draws all reasonable inferences in the plaintiffs' favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Group LLC, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d

2

Cir. 1985).  The Court should not dismiss a complaint if the plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiffs, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.  Where the interpretation of a contract is at issue, in considering the contract's terms to determine whether the plaintiffs can prove any set of facts which would entitle them to relief, the Court is "not constrained to accept the allegations of the complaint in respect of the construction of the Agreement," although all contractual ambiguities must be resolved in the plaintiffs' favor.  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995); see also Compania Financiera Ecuatoriana de Desarollo, S.A. v. Chase Manhattan Bank, No. 97 Civ. 5724, 1998 WL 74299, at *1  (S.D.N.Y. Feb. 19, 1998), aff'd, 165 F.3d 13, 13 (2d Cir. 1998) (unpublished table opinion).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc., 814 F. Supp. 2d 395, 402 (S.D.N.Y. 2011); see also See In re ProShares Trust Sec. Litig., 889 F. Supp. 2d 644, 648 (S.D.N.Y. 2012) aff'd, No. 12-3981, 2013 WL 3779364 (2d Cir. July 22, 2013).


## II.

The Court accepts the plaintiffs' allegations in the Amended Complaint as true for purposes of this motion to dismiss.  The defendant, Management Health Solutions, is a New York corporation with its principal place of business in Connecticut.  (Am. Compl. ¶ 22.)  The plaintiffs are individuals who owned and operated a New Hampshire corporation known as AtPar, Inc., which merged into a Delaware corporation also called AtPar, Inc.  (Am. Compl. ¶¶ 12-21, 26.)  The corporation that resulted from the merger is collectively referred to as "AtPar."  AtPar offers certain software products and generates revenue from the sale of licenses and maintenance and support

services for those software product offerings.  (Am. Compl.
¶ 3.)

On March 31, 2010, the plaintiffs and the defendant entered
into the Agreement, pursuant to which the plaintiffs sold all of
the stock in AtPar to the defendant.  (Am. Compl. ¶¶ 26-27; see
Am. Compl., Ex. A ("SPA").)  Among other things, the defendant
agreed to provide the plaintiffs with an "Earn-Out Payment" if
AtPar achieved revenues of at least $2,900,000.00 (the
"threshold") in the period from January 1, 2010 through March
31, 2011 (the "Earn-Out Period").  (Am. Compl. ¶¶ 3-4; SPA
§§ 1.2(c); 1.2(c)(i).)  The Agreement refers to the revenue from
any AtPar sales used to determine if the threshold was met as
"Qualifying Revenue."  (SPA § 1.2(c).)  The Agreement defines
"Qualifying Revenue" as follows:

> The Earn-Out Payment will be based on the Company's
> revenues from the sale, during the period January 1,
> 2010 through and including March 31, 2011 (the "Earn-
> Out Period"), of AtPar software licenses, software
> maintenance, and software support for current and
> future AtPar software product offerings, software
> maintenance, and software support for current and
> future AtPar software product offerings as of the
> Closing Date, but excluding revenue related to all
> sales of services and hardware, the amount of such
> revenue to be determined according to GAAP
> ("Qualifying Revenue").

(SPA § 1.2(c).)

The Agreement provides that the defendant and AtPar's
independent auditors would produce an "Earn-Out Report"

providing the defendant's "written determination, including
reasonable detail supporting the determination, of the
Qualifying Revenue and the calculation of the Earn-Out Payment
(if any)."  (SPA § 1.2(c)(iii); see Am. Compl. ¶ 39.)  As noted
above, the Agreement provides that Qualifying Revenue was to "be
determined according to GAAP."  (SPA § 1.2(c).)

Within sixty days of the defendant's provision of the Earn-
Out Summary Report to the plaintiffs, the Agreement permits the
plaintiffs to submit an Earn-Out Objection Notice "specifying in
reasonable detail the Seller Representative's disagreement with
[the defendant's] determination of the Qualifying Revenue."
(SPA § 1.2(c)(iii).)  The Agreement refers to any dispute
regarding the calculation of Qualifying Revenue as a
"Calculation Dispute."[1]  (SPA § 1.2(c)(iii).)  If a Calculation
Dispute arises that the parties cannot resolve between
themselves the Agreement provides as follows:

> [The plaintiffs' representative] may request that the
> American Arbitration Association appoint an
> independent third party accounting firm of recognized
> national or regional standing (the "Independent
> Accounting Firm"), to review this Agreement and the
> disputed items or amounts for the purpose of
> calculating the Qualifying Revenue and the Earn-Out
> Payment (if any) (it being understood that in making
> such calculation, the Independent Accounting Firm will
> be functioning as an expert and not as an
> arbitrator. . . .  The Independent Accounting Firm's

---

[1] The SPA identifies Calculation Disputes and Change Disputes.
(SPA § 1.2(c)(iii).)  The parties agree that the plaintiffs do
not allege any Change Dispute.  (Am. Compl. ¶ 101.)

> determination of any disputed items or amounts and its
> calculation of the Earn-Out Payment . . . shall be
> binding and conclusive on the parties.

(SPA § 1.2(c)(iii).)

The Agreement also mentions GAAP in the sections that provide for disclosure of AtPar's and the defendant's financial records. (See SPA §§ 3.7, 5.6.) Section 3 of the Agreement provides the representations and warranties of the selling stockholders. (SPA at 9.) Pursuant to section 3.7, the stockholders represented and warranted that they delivered to the defendant true and complete copies of AtPar's financial statements, which the stockholders represented and warranted "conform to and are consistent with the books and records of [AtPar], and have been prepared in accordance with generally accepted United States accounting principles as consistently applied ("GAAP"), consistent with past practice." (SPA § 3.7.) The defendant did not object to the GAAP application or the determination of revenue by the plaintiffs. (Am. Compl. ¶ 43.) Section 5 of the Agreement provides the representations and warranties of the defendant. (SPA at 29.) Pursuant to section 5.6, the defendant represented and warranted that its internal financial statements "conform to and are consistent with the books and records of the [the defendant], and have been prepared in accordance with generally accepted United States accounting

principles as consistently applied ("GAAP"), consistent with
past practice." (SPA § 5.6.)

Schedule G of the Agreement "sets forth the specific
accounting policies and procedures to be used in determining the
Net Working Capital" of AtPar, which is relevant for a
determination of an adjustment to the consideration paid by the
defendant as a result of the transaction costs of the
acquisition. (SPA Schedule G; SPA § 1.2(d).) Subject to the
exceptions in Schedule G, the December 31, 2009 financial
statements were to be used to calculate Net Working Capital, and
these statements were also provided pursuant to section 3.7 of
the Agreement. Schedule G provides that "[i]f no statement to
the contrary is made in either this Schedule and no differing
Procedure is applicable, then GAAP shall be applied." (SPA
Schedule G.) However, Schedule G also provides, among other
things, a list of assets and liabilities that will be excluded
in calculating Net Working Capital "regardless of whether they
represent assets of current liabilities under GAAP." (SPA
Schedule G ¶ 2.)

During the Earn-Out Period, the defendant submitted monthly
interim reports of the Qualifying Revenue to the plaintiffs.
The plaintiffs allege that these interim reports were
"consistent with the intent of the parties and with the method
of application of GAAP." (Am. Compl. ¶ 36.)

8

The defendant in consultation with its independent auditors produced an Earn-Out Summary Report. (Am. Compl. ¶ 40.) The plaintiffs assert that the application of GAAP in the Earn-Out Summary Report "deviated" from the application of GAAP used in the interim reports and that the defendant "retroactively changed its application [of GAAP] when it issued its Earn-Out Summary Report." (Am. Compl. ¶ 36.) The Earn-Out Summary Report contained a Qualifying Revenue amount of $2,309,800.00, which is approximately $590,200.00 short of the threshold. (Am. Compl. ¶ 37, Ex. B ("Earn-Out Summary Report") at 2.) The defendant removed $1,783,250.00 in Qualifying Revenue from software sales allegedly "in accordance with GAAP." (Am. Compl. ¶ 37.) However, the plaintiffs claim "that amount would have qualified [as revenue] if GAAP had been consistently applied, consistent with past practice." (Am. Compl. ¶¶ 37-38.) The plaintiffs also claim that revenue from certain contracts was erroneously excluded. (Am. Compl. ¶ 46.) Moreover, the plaintiffs assert that the Agreement requires production of two Earn-Out Summary Reports: one with the defendant's calculations and one with the independent auditors' calculations. (Am. Compl. ¶¶ 39-40.)

The plaintiffs filed a timely Earn-Out Objection Notice objecting to the defendant's application of GAAP to determine Qualifying Revenue in the Earn-Out Summary Report. (Am. Compl.

¶¶ 47-48, Ex. C ("Objection Notice").)   In the Objection Notice, the plaintiffs claimed, among other things, that the defendant had "changed its accounting principles for the recognition of revenues  . . . and applied the new accounting principles . . . retroactively to the entire Earn-Out Period for the purpose of calculating Qualifying Revenue and the Seller Representative's entitlement to an Earn-Out under the SPA." (Objection Notice at 1.)   The plaintiffs also objected to the exclusion of certain contracts from the calculation of Qualifying Revenue.  (Objection Notice at 2.)   The plaintiffs stated their position with regard to the application of GAAP as follows:

> [T]he same accounting methods and principles that were used to calculate the base 2009 Financials which served as the reference point for the agreement as to the Earn-Out should be applied to calculate the Qualifying Revenues for the Earn-Out Period.   No change in accounting methods and principles is justified under the terms of the SPA.

(Objection Notice at 2-3.)

The defendant did not make adjustments to the Earn-Out Summary Report in response to the Objection Notice.  (Am. Compl. ¶ 59.)   The plaintiffs now claim that the defendant applied GAAP "in a manner inconsistent with the manner in which the parties determined the Earn-Out formula."  (Am. Compl. ¶ 50.)   The plaintiffs allege that "[t]he omission of the phrase 'as consistently applied, consistent with past practice' after the

reference to GAAP in Section 1.2 [of the Agreement] has, as
interpreted by [the defendant], created an ambiguity as to how
Qualifying Revenue is to be calculated." (Am. Compl. ¶ 51.)
The plaintiffs also allege that there is ambiguity regarding
"whether revenue should qualify toward the Threshold and whether
it should be included if it would qualify under any application
of GAAP and not simply under the application selected by [the
defendant]." (Am. Compl. ¶ 52.) The plaintiffs claim that the
defendant "has interpreted GAAP in such a manner as to deprive
the Stockholders of the Earn-Out Payment." (Am. Compl. ¶ 53.)
Therefore, the plaintiffs claim that the defendant wrongfully
removed $1,783,250.00 from Qualifying Revenue and denied the
plaintiffs the Earn-Out Payment to which they were entitled
under the SPA. (See Am. Compl. ¶ 55.)

The Agreement provides that it and any disputes arising
under it will be "governed, construed and interpreted in
accordance with the laws of the State of New York, without
giving effect to principles of conflicts of law." (SPA § 10.7.)
The Agreement contains an integration clause providing: "This
Agreement (including the documents and the instruments referred
to herein) [] constitutes the entire agreement and supersedes
all prior agreements and understandings, both written and oral,
among the parties with respect to the subject matter
hereof. . . ." (SPA § 10.4.)

The plaintiffs seek declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 to resolve the ambiguity that is alleged to exist in the SPA.  The plaintiffs also bring claims for breach of contract based on the defendant's calculation of Qualifying Revenue under GAAP, which did not apply GAAP "as consistently applied, consistent with past practice," and based on the defendant's "determination of the Earn-Out payment in consultation with independent auditors rather than having the Earn-Out Payment determined independently by both [the defendant] and the independent auditors."  (Am. Compl. ¶¶ 65-67.)  The plaintiffs seek damages for the defendant's alleged breach of contract.  (Am. Compl. ¶ 69.)  The plaintiffs also bring claims for unjust enrichment, equitable estoppel, and breach of the duty of good faith and fair dealing.  (Am. Compl. ¶¶ 72, 78-79, 83-91.)  The plaintiffs seek further relief, including appointment of an independent accounting firm "[i]n the interest of judicial economy," an accounting of Qualifying Revenue, and a request that this Court retain jurisdiction to enter final judgment.  (Am. Compl. ¶¶ 93-94, 98, 108.)

The defendant now moves to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.

The plaintiffs seek a declaratory judgment that the term
"GAAP" as used in the Earn-Out Payment section of the Agreement
means GAAP consistent with past practice, namely consistent with
the past practices used to produce AtPar's financial reports
pursuant to section 3.7 of the Agreement.  The defendant argues
that the plaintiffs have not stated a claim for declaratory
judgment because there is no ambiguity requiring judicial
clarification in the term "GAAP" as used in the Agreement
because GAAP is a term of art pervasively relied upon in the
field of accounting.

Under New York law, "the initial interpretation of a
contract is a matter of law for the court to decide." K. Bell &
Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir.
1996) (quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295,
299 (2d Cir. 1996)).  "Whether a contract is ambiguous is a
question of law." Curry Rd. Ltd. v. K Mart Corp., 893 F.2d 509,
511 (2d Cir. 1990).  However, the Court should construe a
contract as a matter of law only if the contract is unambiguous
on its face.  See Metro. Life Ins. Co. v. RJR Nabisco Inc., 906
F.2d 884, 889 (2d Cir. 1990).  A contract is unambiguous if it
"has a definite and precise meaning, unattended by danger of
misconception in the purport of the [contract] itself, and
concerning which there is no reasonable basis for a difference

13

of opinion." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993) (quoting Breed v. Ins. Co. of N. Am., 385 N.E.2d 1280, 1282 (N.Y. 1978)) (alteration in original and internal quotation marks omitted). Where the contractual language is subject to more than one reasonable meaning and where extrinsic evidence of the parties' intent exists, the question of the proper interpretation should be submitted to the trier of fact. Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993); Abner, Herrman & Brock, Inc. v. Great N. Ins. Co., 308 F. Supp. 2d 331, 336 (S.D.N.Y. 2004); see also Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 502 (S.D.N.Y. 2007).

The defendant argues that "GAAP" as used in the Earn-Out Payment section of the Agreement, which provides that any Qualifying Revenue will "be determined according to GAAP," is unambiguous. (See SPA § 1.2(c).)  The plaintiffs argue that the Agreement is ambiguous because "GAAP" is ambiguous, and seek a declaration that GAAP means GAAP "consistent with past practice" as used in other portions of the Agreement. (See SPA §§ 3.7, 5.6.)  However, GAAP is not an ambiguous term.  Federal Account Standards Advisory Board, Authoritative Source of Guidance http://www.fasab.gov/accounting-standards/authoritative-source-of-gaap/# (last visited July 10, 2013) ("The term generally accepted accounting principles (GAAP)

14

has a specific meaning for accountants and auditors"). As the defendant points out, the application of GAAP is not sui generis. GAAP is simply the set of principles that the parties agreed would be used by expert accountants to determine Qualifying Revenue. In the event of any dispute, the Agreement provides that the proper application of GAAP is to be determined by an Independent Accounting Firm acting as an expert and appointed by the American Arbitration Association at the request of the parties, not by a court.

The plaintiffs point to cases that they claim support the proposition that GAAP is an ambiguous term. See Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 100 (1995); Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 544 (1979); In re Ikon Office Solutions, Inc. Secs. Litig., 277 F.3d 658, 675 n.22 (3d Cir. 2002); Westmoreland Coal Co. v. Entech, Inc., 794 N.E.2d 667, 671 (N.Y. 2003). However, these cases stand for the unremarkable proposition that it requires accounting expertise to apply GAAP. See, e.g., Guernsey Mem.'l Hosp., 514 U.S. at 101; Westmoreland Coal Co., 794 N.E.2d at 671.

The plaintiffs' argument that GAAP is an ambiguous term is really an argument that the defendant improperly applied GAAP to calculate Qualifying Revenue. The Agreement refers to such disputes as Calculation Disputes and requires that such disputes be resolved by an Independent Accounting Firm pursuant to

15

section 1.2(c)(iii) of the Agreement.  The plaintiffs have not made any argument as to why section 1.2(c)(iii) is unenforceable.  Accordingly, this claim is **dismissed**.


**IV.**

The plaintiffs claim that the defendant breached the Agreement by (i) improperly applying GAAP to calculate Qualifying Revenue, and (ii) by calculating Qualifying Revenue for the Earn-Out Summary Report in consultation with AtPar's independent auditors rather than preparing separate reports by the defendant and the independent auditors.  The defendant argues that it did not breach the Agreement because it calculated the Qualifying Revenue in accordance with GAAP and because the Agreement does not require the defendant's auditors to calculate independently the Qualifying Revenue and any Earn-Out Payment.

A claim for breach of contract under New York law requires: (i) the existence of a contract; (ii) performance by the party seeking recovery; (iii) nonperformance by the other party; and (iv) damages attributable to the breach.  Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 402 (S.D.N.Y. 2012) (quoting IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 402 (S.D.N.Y. 2009)).

16

**A.**

The plaintiffs claim that the defendant improperly applied
GAAP because it did not apply GAAP consistent with past
practice, which caused the defendant's erroneous omission of
certain revenue from its calculation of Qualifying Revenue.
GAAP refers to a set of principles used by accounting
professionals.  There are no plausible factual allegations that
the defendant, in consultation with AtPar's independent
auditors, failed to calculate Qualifying Revenue pursuant to
GAAP.  Rather, the plaintiffs argue that the parties' intent was
to apply GAAP consistent with how AtPar's financial statements
were prepared in the past pursuant to section 3.7 of the
Agreement.  More specifically, the plaintiffs argue that if the
revenue from some contracts was included in AtPar's past
financial statements, then those contracts should have been
included in the calculation of Qualifying Revenue for the Earn-
Out Payment.  However, that was not the provision that the
parties included in the contract.  The parties could have
provided the specific contracts to be included in the
calculation of Qualifying Revenue or they could have provided
that Qualifying Revenue was to be calculated in the same way as
the calculations of revenue included in AtPar's prior financial
statements produced pursuant to section 3.7 of the Agreement.
But the parties provided neither.  They only provided that the

17

Qualifying Revenue was to "be determined according to GAAP," and the plaintiffs have made no plausible allegations that it was not.

Moreover, the Agreement is fully-integrated.  Section 10.4 provides that the Agreement "supersedes all prior agreements and understandings."  (SPA § 10.4.)  Therefore, the plain text of the Agreement, which provides for calculation of Qualifying Revenue pursuant to GAAP, controls.

Indeed, the financial statements calculated pursuant to Schedule G and section 3.7 of the Agreement belie the plaintiffs' interpretation of GAAP as requiring calculation of Qualifying Revenue in accordance with AtPar's past practice. Section 3.7 of the Agreement provides that AtPar's financial statements "have been prepared in accordance with [GAAP] as consistently applied . . . consistent with past practice."  (SPA § 3.7.)  This provision was ambiguous as to whether the past financials were consistent with GAAP but at least made clear that the financial statements produced pursuant to section 3.7 of the Agreement were consistent with past practice.  To calculate Net Working Capital, which was important for the calculation of a Working Capital Adjustment and the consideration for the sale (see SPA § 1.2(d)), the parties explicitly made exceptions to GAAP.  (See SPA Schedule G ¶ 2.) Hence, when the parties described financial statements or

18

calculations that differed from a straight application of GAAP they specified that in the Agreement.  For the calculation of Qualifying Revenue, the parties only provided that it be calculated "according to GAAP," not that it be consistent with past practice, that any exceptions should be made to GAAP, or that any revenue should be specifically included or excluded. They knew how to do these things, but did not do so in specifying how Qualifying Revenue was to be calculated.

The reading that the plaintiffs urge would render superfluous the inclusion of "consistent with past practice" in sections 3.7 and 5.6 of the Agreement.  "An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." Bank of N.Y. v. First Millennium, Inc., 598 F. Supp. 2d 550, 556-57 (S.D.N.Y. 2009), aff'd, 607 F.3d 905 (2d Cir. 2010) (internal quotation marks omitted) (citing Galli v. Metz, 973 F.2d 145, 149 (2d Cir. 1992)).  Where the parties wanted revenue calculated through procedures other than those provided by GAAP they knew how to do that, and that is precisely what they did in Schedule G of the Agreement.  It is therefore an unreasonable interpretation of the contract to add the qualification that GAAP be applied "consistent with past

practice" where that has not been specified.[2]  Accordingly, the defendant did not breach the Agreement in making its calculations of Qualifying Revenue.

The plaintiffs simply take issue with how the defendant made those calculations.  However, pursuant to the Agreement any dispute regarding how the defendant calculated Qualifying Revenue is a Calculation Dispute that must be either resolved by the parties or by an Independent Accounting Firm appointed by the American Arbitration Association at the request of the parties. (See SPA § 1.2(c)(iii).)  The plaintiffs should pursue the relief the parties negotiated and agreed upon.

### B.

The plaintiffs claim that the defendant breached the Agreement because it calculated Qualifying Revenue in the Earn-Out Summary Report in consultation with AtPar's independent auditors.  The defendant argues that the Agreement does not require two independent calculations or the creation of two reports, and, therefore, the defendant did not breach the Agreement.

---

[2] Moreover, as the defendant points out, in resolving a Calculation Dispute the Independent Accounting Firm is provided only the Agreement and the disputed amounts, not prior financial data, which would be required to resolve a dispute comparing the Earn-Out Report to past practice.  (See SPA § 1.2(c)(iii).)

The relevant portion of the Agreement states that "[t]he
Qualifying Revenue and the calculation of the Earn-Out Payment
(if any) will be determined by [the defendant] and [AtPar's]
independent auditors." (SPA § 1.2(c)(iii).) As the defendant
points out, the Agreement does not require AtPar's independent
auditors to calculate independently the Qualifying Revenue or
any Earn-Out Payment. The plaintiffs argue that producing an
Earn-Out Summary Report in consultation with the independent
auditors is contrary to the plain language of the Agreement.
That is an unreasonable interpretation of that language. The
Agreement simply provides that the defendant and the independent
auditors should calculate the Qualifying Revenue and any Earn-
Out Payment—it does not require an independent calculation or an
independent report by the independent auditors. Moreover, there
is no basis on which the plaintiffs can prove damages from any
alleged breach of contract because the plaintiffs have not
alleged that there would have been any discrepancy between the
calculations of Qualifying Revenue by the independent auditors
and the calculations by the defendant if they had not worked
together to calculate Qualifying Revenue.

The Agreement also requires that the plaintiffs seek review
of the Earn-Out Summary Report and any objections by an
Independent Accounting Firm appointed by the American
Arbitration Association rather than seeking judicial relief in

an action for breach of contract.  (See SPA § 1.2(c)(iii).)  It is undisputed that the plaintiffs have not sought the relief provided for in the Agreement.  The plaintiffs cannot bring a claim for breach of contract without pursuing the remedy that the parties negotiated and agreed upon.

**V.**

The plaintiffs claim that the defendant has been unjustly enriched because it did not make the Earn-Out Payment due to the plaintiffs.  The defendant argues that the claim for unjust enrichment is barred because it is predicated on the allegedly improper calculation of Qualifying Revenue, which is governed by the Agreement.

A claim for unjust enrichment "is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists." Mina Inv. Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 361 (S.D.N.Y. 1998) (citations omitted). There is no claim for unjust enrichment that is independent of what the defendant would owe the plaintiffs under the Agreement. The defendant satisfied its obligation to the plaintiffs by calculating the Earn-Out Payment in accordance with the Agreement.  The defendant fulfilled its obligation to calculate the Qualifying Revenue pursuant to GAAP, and any dispute regarding whether the Qualifying Revenue met the threshold for

22

an Earn-Out Payment should be resolved by an Independent
Accounting Firm appointed by the American Arbitration
Association as provided in the Agreement.  Therefore, the claim
for unjust enrichment is barred.

The plaintiffs argue that the claim for unjust enrichment
is not barred because "[t]here is at least a question of fact as
to whether Defendant may be obligated by something other than
[the Agreement]."  (Pl. Mem. at 19.)  However, there is nothing
in the Amended Complaint that indicates that the defendant owed
the plaintiffs some duty that is not contained in the Agreement.
There are no factual allegations that are sufficient to state a
plausible claim that there is any other obligation owed by the
defendant to the plaintiffs.  The plaintiffs' speculation is
insufficient to maintain the plaintiffs' claim for unjust
enrichment.  Accordingly, the claim for unjust enrichment is
**dismissed**.


## VI.

The plaintiffs claim that the defendant's calculation of
Qualifying Revenue pursuant to GAAP is barred by the doctrine of
equitable estoppel.  The plaintiffs point out that the defendant
did not object to any of the financial statements AtPar provided
to the defendant, which were calculated based on GAAP consistent
with past practice pursuant to section 3.7 of the Agreement, and

that the defendant provided interim reports that indicated that the Qualifying Revenue would meet the threshold for an Earn-Out Payment.  The plaintiffs claim they detrimentally and reasonably relied on the defendant's failure to object to the AtPar financial statements and on the defendant's interim reports. The plaintiffs, therefore, seek to bar the defendant from calculating the Qualifying Revenue pursuant to GAAP and urge that the defendant should be obligated to calculate the Qualifying Revenue pursuant to GAAP consistent with past practice.  The defendant argues that the plaintiffs have not stated a claim for equitable estoppel because the defendant has not made any misrepresentations on which the plaintiffs reasonably and detrimentally relied.

A claim for equitable estoppel requires "(1) a misrepresentation by the defendant; (2) reasonable reliance on that misrepresentation by the plaintiff[s], and (3) prejudice." William Penn Life Ins. Co. of N.Y. v. Viscuso, 663 F. Supp. 2d 353, 357 (S.D.N.Y. 2009).  Moreover, "the part[ies] seeking the estoppel must not have known, and could not have learned, the true facts, and must have acted in good faith."  Id.

The plain text of the Agreement bars the plaintiffs' claim that the defendant should be estopped from calculating Qualifying Revenue pursuant to GAAP.  The Agreement provides for calculation of Qualifying Revenue pursuant to GAAP, and the

plaintiffs have not offered any reason why that unambiguous provision of the contract is unenforceable.  Any interim reports or financial statements do not alter the obligation under the Agreement to calculate Qualifying Revenue pursuant to GAAP, particularly in light of the fact that the Agreement specifically states that its language supersedes any prior agreement or understanding.  (See SPA § 10.4.)  Accordingly, the plaintiffs' claim for equitable estoppel is **dismissed.**


## VII.

The plaintiffs seek other remedies that are plainly precluded by the Agreement, including the appointment of an accounting firm and an accounting, and that this Court retain jurisdiction to enter judgment on any amount that the accounting firm determines the defendant owes the plaintiffs.  The Agreement provides that any Calculation Disputes that the parties cannot resolve amongst themselves should be resolved by an Independent Accounting Firm appointed by the American Arbitration Association at the parties' request.  (SPA § 1.2(c)(iii).)  The plaintiffs have not sought appointment of an Independent Accounting Firm, and the plaintiffs have not replied to the defendant's argument that the Agreement requires that they pursue appointment of an Independent Accounting Firm. The plain text of the Agreement, therefore, precludes the

plaintiffs from proceeding immediately to federal court without first pursuing the remedy that the parties negotiated and that is provided for in the Agreement.  Accordingly, the plaintiffs' claims for an accounting and appointment of an Independent Accounting firm are barred and must be **dismissed.**

The plaintiffs have not provided a compelling reason why the Court should retain jurisdiction to enforce any award of the Independent Accounting Firm.  There is no reason to retain jurisdiction over this matter in light of the fact that the plaintiffs have not yet requested that the American Arbitration Association appoint an Independent Accounting Firm to resolve the Calculation Dispute.  Therefore, this Court will not exercise its discretion to retain jurisdiction over this matter. If the plaintiffs seek appointment of an Independent Accounting Firm and succeed in obtaining an award, the plaintiffs may then bring a new proceeding to enforce that award.  Accordingly, the plaintiffs' request that this Court retain jurisdiction is **denied.**


## VIII.

The plaintiffs also bring a claim for breach of the implied covenant of good faith and fair dealing based on the defendant's alleged failure to calculate Qualifying Revenue properly.  The plaintiffs claim that misleading interim statements indicated

26

that AtPar's revenue would meet the threshold for an Earn-Out
Payment, but that according to the defendant's ultimate
calculations the threshold was not met.  The defendant argues
that the claim for breach of the implied covenant of good faith
and fair dealing is barred because it is duplicative of the
plaintiffs' claim for breach of contract.

New York recognizes as implicit in every contract "a
covenant of good faith and fair dealing in the course of
contract performance."  Dalton v. Educ. Testing Serv., 663
N.E.2d 289, 291 (N.Y. 1995); see also Jofen v. Epoch
Biosciences, Inc., No. 01 Civ. 4129, 2002 WL 1461351, at *8
(S.D.N.Y. July 8, 2002) aff'd, 62 F. App'x 410, 411 (2d Cir.
2003) (summary order).  This covenant incorporates "any promises
which a reasonable person in the position of the promisee would
be justified in understanding were included," Rowe v. Great Atl.
& Pac. Tea Co., 385 N.E.2d 566, 569 (N.Y. 1978) (citation and
quotation marks omitted), although it does not include any
obligation that would be inconsistent with the express terms of
the contract, see Dalton, 663 N.E.2d at 291-92.  In particular,
the covenant includes a pledge that "neither party shall do
anything which will have the effect of destroying or injuring
the right of the other party to receive the fruits of the
contract."  Id. at 291 (quoting Kirke La Shelle Co. v. Paul
Armstrong Co., 188 N.E. 163, 167 (N.Y. 1933)); see M/A-COM Sec.

27

Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990); see also
Payday Advance Plus, 478 F. Supp. 2d at 503.

However, "New York law . . . does not recognize a separate
cause of action for breach of the implied covenant of good faith
and fair dealing when a breach of contract claim, based upon the
same facts, is also pled." Harris v. Provident Life & Accident
Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) (alteration in
original); see Woodhams v. Allstate Cas. Co., No. 10 Civ. 441,
2010 WL 3858440, at *10 (S.D.N.Y. Sept. 28, 2010) aff'd, 453 F.
App'x 108, 109 (2d Cir. 2012) (summary order); see also Reed v.
Delta Airlines, Inc., No. 10 Civ. 1053, 2011 WL 1085338, at *5
(S.D.N.Y. Mar. 23, 2011).  Instead, an alleged breach of the
implied covenant of good faith and fair dealing is part of a
general breach of contract claim.  Reed, 2011 WL 1085338, at *5.

A claim for breach of the implied covenant of good faith
and fair dealing can be maintained simultaneously with a breach
of contract claim "only if the damages sought by the
plaintiff[s] for breach of the implied covenant are not
intrinsically tied to the damages allegedly resulting from
breach of contract." Page Mill Asset Mgmt. v. Credit Suisse
First Bos. Corp., No. 98 Civ. 6907, 2000 WL 335557, at *8
(S.D.N.Y. Mar. 30, 2000) (quoting Canstar v. J.A. Jones Constr.
Co., 622 N.Y.S.2d 730, 731 (App. Div. 1995)) (internal quotation
marks omitted); see Nanjing Textiles IMP/EXP Corp. v. NCC

*Sportswear Corp.,* No. 06 Civ. 52, 2006 WL 2337186, at *12
(S.D.N.Y. Aug. 11, 2006); Concesionaria DHM, S.A. v. Int'l Fin.
Corp., 307 F. Supp. 2d 553, 563-65 (S.D.N.Y. 2004); see also
Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A., No. 06 Civ.
5246, 2007 WL 950134, at *6 (S.D.N.Y. Mar. 28, 2007).
Therefore, a claim for breach of the implied covenant of good
faith and fair dealing should be dismissed as duplicative when
it arises from the same facts as a breach of contract claim.
See, e.g., Excelsior Fund, 2007 WL 950134, at *7.

The plaintiffs' claim for breach of the implied covenant of
good faith and fair dealing is duplicative of the claim for
breach of contract.  The plaintiffs argue that the two claims
are different because the claim for breach of the implied
covenant of good faith and fair dealing arises from misleading
interim reports indicating that AtPar would meet the threshold
when, ultimately, the defendant's calculations revealed that
AtPar had not met the threshold and no Earn-Out Payment was due.
It is plain that this claim arises from the same facts as the
claim for breach of contract, namely the defendant's allegedly
improper calculation of Qualifying Revenue.  The plaintiffs do
not allege fraud by the defendant.  This claim simply goes to
whether the defendant made an error in making its calculation of
Qualifying Revenue, which is the basis for the plaintiffs'
breach of contract claim.  Accordingly, the plaintiffs' claim

for breach of the implied covenant of good faith and fair dealing is duplicative of the claim for breach of contract and must be **dismissed**.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, the arguments are either moot or without merit.  The defendant's motion to dismiss is **granted.  The Clerk is directed to enter judgment dismissing the Amended Complaint and to close all pending motions.**

SO ORDERED.

Dated:      New York, New York
            August 10, 2013           _____/s/_____
                                           John G. Koeltl
                                   United States District Judge